VEEDER-ROOT INC., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8144. Promulgated October 13, 1948.

L. F. Robinson, Jr., Esq., for the petitioner.
Melvin L. Sears, Esq., for the respondent.

**606**

OPINION.

VAN FOSSAN, *Judge*: In the first issue we have the problem of determining whether or not the petitioner is entitled to adjust its base period net income by disallowing certain deductions under the provisions of section 711 (b) (1) (E).[1]

On brief, the respondent conceded that the petitioner was entitled to disallowance of the loss of useful value of buildings and equipment in an agreed amount, leaving in controversy the cost of tools required in the production of the 1937 computer and of the yardage-measuring or cut meter device, and the capital stock tax issue.

Petitioner charged the $105,393.99 item to cost of sales on its books and in its tax return. It did not claim the item as a "deduction for losses * * * arising from the demolition, abandonment, or loss of useful value of property." In this situation, the holding of this Court and the language used in *Consolidated Motor Lines, Inc.*, 6 T. C. 1066, is squarely in point. In that case, where a factual similar situ-

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

\* \* \* \* \* \* \*

(b) TAXABLE YEARS IN BASE PERIOD.—

(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)) :

\* \* \* \* \* \* \*

(E) Casualty, Demolition, and Similar Losses.—*Deductions under section 23 (f) for losses* arising from fires, storms, shipwreck, or other casualty, or from theft, or *arising from the demolition, abandonment, or loss of useful value of property*, not compensated for by insurance or otherwise, shall not be allowed. [Italics supplied.]

\* \* \* \* \* \* \*

ation and an identical question under the same statutory provision was under consideration, we observed:

The question here is whether the amounts paid out by the petitioner, for which it was not compensated by insurance or otherwise, because of the injuries to cargo, persons, and property and to employees are, for purposes of computation of excess profits tax, to be disallowed as deductions for losses under section 711 (b) (1) (E) and 23 (f) of the Internal Revenue Code.

The petitioner relies upon that section and no other. It is there provided that adjustment shall be made, in arriving at excess profits net income in the base period years, by not allowing "Deductions under section 23 (f) for losses" arising from fires, storms, or other casualty, etc., not compensated for by insurance or otherwise. In other words, we are to review the deductions taken in the former year and those taken for losses from fire, etc., are to be eliminated. It is to be noted that we are to disallow not *losses*, but "Deductions under section 23 (f) for losses." But the facts before us are that the petitioner did not take, and was not allowed, the deductions here concerned "under section (f)," but took them for *expenses*, and that would be under section 23 (a) (1) (A). Now, in the computation of base period excess profits net income, the petitioner urges the disallowance of the same items as losses under section 23 (f) and the provisions of section 711 (b) (1) (E). Not only do we find illogic in the presentation now as loss of what both petitioner and the Commissioner (by allowance of deduction) regarded in the base period years as expenses, but the statute appears to contain no ground for the view taken by the petitioner. We find no authority to change an expense under section 23 (a) (1) (A) into a loss under section 23 (f), in order to consider and disallow it in connection with the excess profits tax law. The statute on its face puts us in the position of examining returns, not amending them.

The above statement of the law and the consequent ruling in *Consolidated Motor Lines, Inc., supra*, fit the present case so neatly that they are dispositive of the present issue as to the $105,393.99 item. Moreover, in the present record there is so much confusion as to the obligations of Wayne in respect of the cost of tools as to make uncertain the real ownership of the tools and the petitioner's rights therein and to raise a serious question whether losses were sustained in fact.

As to the cut meter costs, we are met with a lack of evidence. The 1939 return is not in evidence and, albeit one witness testified that the item was deducted in the tax return, he did not establish just how it was treated or that the item was deducted as losses. The lack of familiarity of the witness with the details affords no basis for determining with assurance the real facts. Petitioner has not proven that this item should be disallowed under section 711 (b) (1) (E). Consequently, we must affirm the Commissioner for failure of proof.

In the last issue, the petitioner challenges the adjustments made by the respondent relating to its capital stock taxes. The respondent justifies his action under the authority of G. C. M. 23251, C. B. 1942-2, p. 103, in which appeared the following rules:

* * * By the Revenue Act of 1939, however, taxpayers were given the option of declaring a new value for that year. A taxpayer which files its return on a

calendar year basis, for Federal income tax purposes, and declares a new value for capital stock tax purposes should accrue on July 1, 1939, a capital stock tax based on the new value and at the rate of $1.10 per $1,000 valuation, as set forth in the Revenue Act of 1940, since that Act was enacted prior to the close of the capital stock tax year 1939–1940. If the taxpayer did not declare a new value for the capital stock tax year 1939–1940, but adjusted the value from the capital stock tax year 1938–1939, then the July 1, 1939, accrual should be based on the adjusted declared value as of December 31, 1939, and at a rate of $1 per $1,000 valuation.

The capital stock tax accrual on July 1, 1940, for the capital stock tax year 1940–1941, which was a declaration year, should be based on the declared value shown in the final capital stock tax return filed for that year at the rate in effect on the date of filing. If the return was filed after the enactment of the Revenue Act of 1941 on September 20, 1941, the rate prescribed by that Act, or $1.25 per $1,000 valuation, should be used. If no amended capital stock tax return was filed subsequent to enactment of the Revenue Act of 1941, then the capital stock tax accrual as at July 1, 1940, should be based on the declared value shown in the final capital stock tax return filed for the capital stock tax year 1940–1941, computed at the rate in effect at the time the return was filed, that is, at $1.10 per $1,000 valuation.

It is the basic principle of capital stock taxation that the tax liability accrues at the beginning of the capital stock period. See *William C. Atwater & Co.*, 10 T. C. 218, and the cases there cited. The facts in the case at bar bring the determination of this issue well within the rule stated in G. C. M. 23251. We consider the rule reasonable in its requirements. By applying that rule, we find that the final capital stock tax returns for both years were filed after the enactment of the applicable sections of the Revenue Acts of 1940 and 1941, respectively, increasing the rate of tax. Therefore, the adjustments made by the respondent in the petitioner's deductions for the capital stock taxes are approved.

The petitioner cites and relies on the *First National Bank in St. Louis*, 1 T. C. 370. The facts in that case, however, are distinguishable from those before us and hence it is not applicable.

*Decision will be entered under Rule 50.*